[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11906
Non-Argument Calendar
_____

BIA No. A79-497-268

JUAN BOLIVAR SOLER,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(December 10, 2007)**

Before BIRCH, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Juan Bolivar Soler seeks review of the Board of Immigration Appeals'

("BIA") order affirming the Immigration Judge's ("IJ") order of removal and denial of his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the Convention Against Torture ("CAT"), 8 U.S.C. § 1231(b)(3), 8 C.F.R. § 208.16(c).

Bolivar Soler, a native and citizen of Colombia, was admitted to the United States on or about August 29, 2000, as a nonimmigrant with authorization to remain in the United States until February 28, 2001. The Department of Homeland Security ("DHS") issued Bolivar Soler a Notice to Appear ("NTA"), charging that he was subject to removal under INA § 237(a)(1), 8 U.S.C. § 1227(a)(1), as an alien who remained in the United States for a time longer than permitted.

Bolivar Soler subsequently filed an application for asylum, withholding of removal, and relief under CAT. In his application, Bolivar Soler indicated that he was a member of the Colombian Liberal Party and was "under death threats by [the Revolutionary Armed Forces of Colombia ("FARC")] in Colombia." According to Bolivar Soler, the FARC declared him "a military objective because of [his] political activity and for [his] participation in a particular social group." As corroboration, Bolivar Soler included in his asylum application letters from three Liberal party members stating that his political campaigning was suspended because he began to receive death threats from the FARC, as well as several articles regarding country conditions in Colombia.

2

At the asylum hearing, Bolivar Soler testified that in May 2000, the FARC called him and told him to stop his work with the Liberal party and to stay out of the neighborhoods in which he had been campaigning for an upcoming election. Altogether, Bolivar Soler received 35 to 45 calls from the FARC. On August 10, 2000, Bolivar Soler's secretary gave him a message that the FARC had declared him a "military objective." On August 14, 2000, Bolivar Soler found his car with the tires punctured and a sign on the hood that said "death to the traitor of the people." The next day, a vehicle attempted to run over Bolivar Soler as he was crossing the street. Although Bolivar Soler initially believed that it was a drunk driver, he received a call later that evening from a member of the FARC who told him: "[Y]ou saved yourself this time, but before October, we're going to blow you to pieces." Soon after these incidents, on August 29, 2000, Bolivar Soler left Colombia. Bolivar Soler stated that if he and his family were to return to Colombia, the FARC would kill them. Bolivar Soler testified that he did not report any of the incidents to the police because police protection was offered only to those "persons that are representatives in the fighting, candidates, governors, mayors," and "[d]oing that would be much more, would cost me more (indiscernible) due to the fact that many members of the guer[r]illas are, were infiltrated in the military ranks (indiscernible)."

The IJ denied Bolivar Soler's application for asylum, withholding of

removal, and CAT relief. In his oral decision, the IJ found Bolivar Soler's testimony consistent with his written application but found that the acts Bolivar Soler complained of were not so extreme as to rise to the level of persecution.

The BIA subsequently affirmed the IJ and dismissed Bolivar Soler's appeal, finding that the threats and other incidents related by Bolivar Soler did not rise to the level of past persecution, and, therefore, that he was not entitled to a presumption of a well-founded fear of persecution. Thus, the BIA determined that Bolivar Soler did not show he was entitled to asylum, withholding of removal, or CAT relief.

## I. **Jurisdiction**

On appeal, Bolivar Soler makes three arguments over which the government contends that this Court lacks jurisdiction. First, Bolivar Soler argues that the IJ erred by: (1) failing to acknowledge the supporting letters and country reports he submitted; and (2) determining that he did not suffer past persecution. Second, Bolivar Soler argues that the IJ erred by denying him CAT relief. Third, Bolivar Soler argues that the IJ erred by failing to rule on his request for a voluntary departure.

Bolivar Soler did not present to the BIA the arguments that (1) the IJ erred by failing to rule on his request for a voluntary departure, or (2) the IJ erred by denying him CAT relief. Therefore, he did not exhaust his administrative remedies

4

with regard to those issues, and we therefore have no jurisdiction to consider them. However, Bolivar Soler argued before the BIA that the IJ erred by failing to acknowledge the letters he submitted to the court in support of his position. In addition, Bolivar Soler raised the claim that he was unable to avail himself of the protection of his home country when he stated in his brief that "[C]ountry condition reports show that the Government of Colombia is unable to protect its citizens from the FARC." Finally, by repeatedly asserting that he established that he suffered past persecution, based, in part, on the letters and other supporting documentation, Bolivar Soler exhausted the issue of past persecution before the BIA. Since, Bolivar Soler raised these arguments before the BIA, we have jurisdiction to consider them.

## II. Past Persecution

Bolivar Soler argues that the IJ erred by finding that he did not suffer past persecution because, after a series of escalating events, the FARC attempted to kill him by running him over with a car. Bolivar Soler contends that his testimony was entitled to great weight because the IJ found that he was credible and that his testimony was consistent with his application. Moreover, Bolivar Soler asserts that he presented extensive documentation that supported his position, including several letters that explicitly referred to the FARC by name and published reports from respected organizations. Thus, because he established that he suffered past

5

persecution, Bolivar Soler contends that he was entitled to a rebuttable presumption of a well-founded fear of future persecution.

We have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted). Nonetheless, we have also held that "attempted murder is persecution." Sanchez-Jimenez, 492 F.3d at 1233; see also Mejia v. U.S. Attorney Gen., 498 F.3d 1253, 1258–59 (11th Cir. 2007) (applying Sanchez-Jimenez to the use of other projectiles as weapons, in that case, a rock). Moreover, "[i]n assessing past persecution we are required to consider the cumulative impact of the mistreatment the petitioner[] suffered." Mejia, 498 F.3d at 1258 (emphasis in original).

Based on the undisputed record, we have no difficulty finding that Bolivar Soler suffered past persecution. In addition to numerous threatening telephone calls, Bolivar Soler received a call from the FARC specifically indicating that he had been declared a "military objective." Just days later, Bolivar Soler found his tires punctured and a sign on the hood that said "death to the traitor of the people." The following day, a member of the FARC attempted to run over and kill Bolivar Soler with a car. After Bolivar Soler narrowly escaped, he received a phone call later that evening from a member of the FARC who confirmed the murder attempt,

6

telling him: "[Y]ou saved yourself this time, but before October, we're going to blow you to pieces." In considering the cumulative effects of the escalating threats, and because there was credible evidence that the FARC attempted to kill Bolivar Soler when it tried to run him over with a car, the record compels the conclusion that he suffered past persecution.[1]

Based upon the foregoing discussion and our review of the record and the parties' briefs, we dismiss the petition as to Bolivar Soler's claims that (1) the IJ erred by failing to rule on his request for a voluntary departure, and (2) the IJ erred by denying him CAT relief, both for lack of jurisdiction. However, because we find past persecution, we grant Bolivar Soler's asylum petition in part and remand to the BIA to allow the government an opportunity to rebut the presumption of well-founded fear of future persecution by showing "by a preponderance of the evidence either that conditions in the country have changed or that the applicant could avoid future persecution by relocating within the county, if, 'under all the circumstances, it would be reasonable to expect the applicant to do so.'" Sanchez-

---

[1] The BIA found that Bolivar Soler's "claim to a well-founded fear of persecution is undermined by his failure to report the threats he received from the FARC or their attempts to injure him, and his failure to seek protection or assistance from authorities and his political party." However, Bolivar Soler testified that police protection was offered only to officials, not to average citizens. He also explained that FARC members had infiltrated the military ranks, making appeal to these sources futile. Based on his credible testimony and what we know of the situation in Colombia, this explanation sufficiently demonstrates that the government was unwilling and/or unable to protect him.

Jiminez, 492 F.3d at 1232.[2]

**PETITION GRANTED IN PART, DISMISSED IN PART, AND REMANDED.**

---

[2] In order to make this showing, we note that it is not enough for the government to show simply that the political activities for which Bolivar Soler was made a target were related to his political activities surrounding the 2000 election. The passing of an election does not necessarily change the political climate such that it would clear Bolivar Soler from the FARC's radar. See Delgado v. U.S. Attorney Gen., 487 F.3d 855, 861 n.4 (11th Cir. 2007) (noting that, even though the election was over, there were at least a dozen politically motivated killings since). Moreover, the BIA should consider that, to the extent that Bolivar Soler's political opinion has not changed, upon his return, he might well seek to participate in other political activity that would bring him in conflict with the FARC. Simply put, it is not the election itself, but rather Bolivar Soler's political beliefs that made him a target of the FARC's persecution.