[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16637

_____

D. C. Docket No. 04-20947-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILBER GUILLERMO VELASQUEZ VELASQUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 21, 2008)**

Before ANDERSON and BARKETT, Circuit Judges and TRAGER,[*] District
Judge.

_____

[*] Honorable David G. Trager, United States District Judge for the Eastern District of
New York, sitting by designation.

PER CURIAM:

Wilber Guillermo Velasquez Velasquez appeals his nine-month sentence for violation of his supervised release. Velasquez's sole argument on appeal is that his sentence was based on the district court's disapproval of the fact that immigration officials had released him on bond pending the outcome of his asylum proceedings.[1] Velasquez argues that the district court exceeded its statutory sentencing authority by basing his sentence on this fact. We agree. Whether he should have been detained or released during the pendency of his immigration proceedings was a matter for an immigration judge to decide, and the district court lacks jurisdiction over immigration matters. We vacate his sentence and remand for resentencing.

**FACTS**

In 2004, Velasquez pleaded guilty to one count of knowingly using a counterfeited visa for entry into the United States, in violation of 18 U.S.C. § 1546(a). He was sentenced to time served and two years' supervised release. A condition of his supervised release required that he not commit another federal,

---

[1] Velasquez, who is currently married to an American citizen, is a Colombian national who has been living in the United States since 2004. His petition for asylum was denied by an Immigration Judge ("IJ"), and at the time of sentencing, his appeal of the IJ's decision was pending before the Board of Immigration Appeals ("BIA").

state, or local crime.

In 2006, Velasquez was arrested for a DUI in New York, and the district court modified the conditions of his supervised release to include a drug treatment condition. Later that same year, the probation office, alleging that Velasquez had violated his supervised release by being charged in New York for driving with a suspended license, filed a petition to again modify the conditions of Velasquez's supervision to require him to perform 100 hours of community service for the violation. In response to the probation office's petition, the district court issued a warrant for Velasquez's arrest. He was arrested in New York, and released on an appearance bond. Thereafter, he appeared for his hearing in Florida before the district court.

At the hearing on the supervised release violation, Velasquez conceded that he had been driving with a suspended license, but asserted that his license had only been suspended because he failed to pay a $25 fee to reinstate his license—a requirement of which he was unaware—after paying the original fine for the DUI. Given the minor nature of offense, Velasquez requested that the district court consider house arrest in order to permit him to continue working.

The district court stated that it appreciated "what [Velasquez] was saying in terms of the de minimus nature of the violation," but then questioned why he was

in the United States. Velasquez responded that he was awaiting the outcome of his appeal to the BIA regarding the denial of his asylum application. The district court inquired as to the time-frame for the disposition of Velasquez's immigration proceedings, to which he responded that he did not know, but that his case had merit, as a friend from his hometown in Colombia had recently received asylum under similar circumstances. The probation officer informed the judge that until his pending appeal was resolved, the immigration authorities had permitted Velasquez to stay in the United States. The district court stated:

> See . . . I'll be candid with you. I mean, I appreciate the de minimus nature of the violation, but I have a hard time accepting the notion that he should remain in the general population of the United States when . . . he's already been denied at the lower level. My guess is that the odds are against overturning that decision.

Aside from this brief exchange, there is no evidence in the record that the district court was aware of any of the facts of Velasquez's asylum case, or that he had any basis upon which to evaluate "the odds" of a favorable resolution.

The judge then added that Velasquez now had more incentive "to kind of go under the radar, because he knows he's facing" deportation, and, notwithstanding the probation officer's assurance that Velasquez was at this point permitted by the IJ to be free on bond, inquired how Velasquez gets to work and whether he is working legally. Velasquez reiterated that he was not in the United States

4

illegally, as his asylum claim still was pending. He asserted that he was unlikely to "overstay" and was respectful of court requirements, noting that he twice flew down to Florida to appear before this judge while out on bond. The district court then responded that Velasquez's release on bond by the immigration judge could have been based on the merits or on the fact that "they don't have the money or the space to put him somewhere." Again, the record offers no support for the judge's speculation.

Velasquez contended that, if the district court were troubled by his immigration status, it could "rest assured that Immigration will do what . . . it does," to which the district court responded:

> Well, you may have more faith in them than I do.
> But here's my offer to you. I mean, I just don't understand . . . the justification for him being at large in the general population in the United States. It doesn't seem right to me. I understand it's a de minimus offense, but I think he ought to be held until such time as this Immigration matter can get resolved.
> I mean his underlying offense is attempting to come or using apparently forged documents to get into the United States?
> But my offer to you would be this. Either he surrender to the custody of the marshal now, or he agree to return to Colombia and avoid incarceration now.

When Velasquez asked whether the district court would consider house arrest in New York so that he could continue working, the district court replied that he should not be working, as he was not in the United States legally. Velasquez

5

again requested that the district court not incarcerate him during the pendency of his appeal before the BIA, to which the district court responded:

> I'm going to incarcerate him. And that will be all the more incentive that he has to get this resolved as quickly as possible. I mean, I'll give him the option if he wants to voluntarily return. If he doesn't, I understand it. It's his choice. But it doesn't seem to me that it's appropriate that he remain at large given his status.

Velasquez stated that rather than go to jail, he would choose to go back to Colombia. The district court granted a continuance in order to allow Velasquez time to "wind up his affairs," arrange for a return ticket, and reconsider his decision to leave. Finally, when asked about imprisonment if that were the option Velasquez was to select, the district court stated that it would be inclined to impose nine months' imprisonment for the violation of driving with a suspended license.

At the subsequent hearing, Velasquez stated that, because of his pending asylum appeal, he did not wish to leave the country, and he asked the district court to (1) reconsider its decision to impose incarceration for a de minimus violation, or (2) sentence him to three months' imprisonment, the low end of the guideline range. The district court stated:

> I think . . . you are correct on the point that he was arrested for a minor infraction, but it—in what is before me, that is just the way in which he was brought in. It still is of concern to me . . . that he is in

the United States illegally when he committed this infraction.  I don't completely understand why he is not in custody just on the fact that he is here illegally. . . .

. . . .

You know, under the circumstances, . . . I don't think you leave me much of a choice but to go ahead and sentence him to a period of incarceration.  And during that period of time, hopefully, his immigration status will be resolved one way or the other.  If we knew that he was going to be removed in a period less than the period I would sentence him to, I would be happy to have the remainder of that sentence suspended.

. . . .

[T]here are many people all around the world who have a fervent desire to be in the United States.  They stand in line.  They stand in line outside the United States and they go through the process legally.  He made some comment that he played by the rules.  Well, you know, he doesn't play by the rules.

Velasquez stated that he believed that the district court was unhappy with Immigration and Customs Enforcement ("ICE") because the court felt that ICE was not acting as quickly as it should, and that he did not understand how the district court could find that the violation was de minimus and yet impose nine months' imprisonment as a reasonable sentence.  He asserted that he would not be released on the street again after the resolution of his asylum appeal, to which the district court interjected: "How do you know that?"  Velasquez responded that he was released on bond when he applied for asylum, speculating that he was released because his case had merit.  The district court stated:

You know, I'm not sure they just let him out on bond.  And you could

turn that around and say they let him out on bond because they didn't have any place to hold him. That sounds much more in my mind and given what I know about how things work—I don't know any more than you do about how things work over there, and I'm more inclined to conclude that they did it as an administrative means rather than the conclusion that there's merit to his case, particularly now that we know that at least one level of immigration has found no merit to the case.

The district court stated that it had "no reason to believe that ICE isn't going to be just as administratively burdened by his incarceration this time as they [sic] were the first time they [sic] let him out," and "[t]he question is why is this man who is here illegally is allowed to roam free in the United States." It stated that Velasquez had created his situation, and "now he's got to pay. . . . [and] be held accountable for that." Velasquez repeated his request for three months' imprisonment, but the district court sentenced him to nine months' imprisonment. Velasquez objected that the sentence was unreasonable, given the district court's motivation for the sentence.

## DISCUSSION

Pursuant to 18 U.S.C. § 3583(e), upon finding that the defendant violated a condition of supervised release, a district court may revoke the term of supervised release and impose a term of imprisonment after considering the specific factors

8

set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(e)(3).[2] We generally review a district court's revocation of supervised release for an abuse of discretion. United States v. Mitsven, 452 F.3d 1264, 1266 (11th Cir. 2006), cert. denied, 127 S. Ct. 663 (2006). We review the sentence imposed upon the revocation of supervised release for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006).

In reviewing the reasonableness of a sentence imposed after conviction, we review de novo, as a question of law, whether a factor considered by the district court in sentencing a defendant is impermissible. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007). "A sentence that is based entirely upon an impermissible factor is unreasonable because such a sentence does not achieve the purposes of § 3553(a)." United States v. Lorenzo, 471 F.3d 1219, 1221 (11th Cir. 2006).

Here, the district court imposed Velasquez's sentence as if it were reviewing (and overturning) the IJ's decision to release Velasquez on bond pending his immigration proceedings. However, the district court lacks the authority to do so. See 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the

---

[2] Velasquez does not dispute that the district court sentenced him within the appropriate Sentencing Guidelines range.

9

Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."). Reading this record, it is beyond peradventure that the district court sentenced Velasquez based entirely on several improper and unsupported misapprehensions.[3]

First, Congress has clearly vested the authority to detain removable aliens in the Attorney General—not in the courts. See 8 U.S.C. § 1231(a)(2) ("During the

---

[3] The district court appears to consider it significant that ICE operates with limited resources when he commented that ICE officials may have "let him out on bond because they didn't have any place to hold him" and when he admitted that he was "inclined to conclude that they did it as an administrative means." Assuming that the decision to release Velasquez on bond was purely administrative ignores the fact that the determination is within the executive branch's discretion, and the district court judge exceeded his statutory authority by attempting to usurp the role of the executive branch by exercising his own discretion in the matter. See 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added)).

In addition, the district court mistakenly assumes that because the IJ denied Velasquez's petition for asylum, the BIA will too. However, the BIA "exercise[s]. . . independent judgment and discretion in considering and determining the cases coming before [it]." 8 C.F.R. § 1003.1(d)(1)(ii). Moreover, even if the BIA did affirm the IJ's decision, this Court may still review the final removal order. See 8 U.S.C. § 1252(b) ("The petition for review [of a final removal order] shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."). In the last three years, this Court has granted petitions to review BIA decisions in nearly a dozen cases involving Colombian citizens alone. See De Santamaria v. U.S. Att'y Gen., __ F.3d __, 2008 WL 109406 (11th Cir. Jan. 11, 2008); Soler v. U.S. Att'y Gen., 2007 WL 4292713 (11th Cir. Dec. 10, 2007); Lopez v. U.S. Att'y Gen., 504 F.3d 1341 (11th Cir. 2007); Henao v. U.S. Att'y Gen., 2007 WL 2948577 (11th Cir. Oct. 11, 2007); Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223 (11th Cir. 2007); Alzate-Zuleta v. U.S. Att'y Gen., 238 F. App'x 472 (11th Cir. 2007); Ruiz v. Gonzalez, 479 F.3d 762 (11th Cir. 2007); Espnonda v. U.S. Att'y Gen., 453 F.3d 1319 (11th Cir. 2006); Hernandez Moncada v. U.S. Att'y Gen., 177 F. App'x 36 (11th Cir. 2006); Arboleda v. U.S. Att'y Gen., 434 F.3d 1220 (11th Cir. 2006); Martinez v. U.S. Att'y Gen., 135 Fed. App'x 395 (11th Cir. 2005).

removal period, the Attorney General shall detain the alien."); see also United States v. Romeo, 122 F.3d 941 (11th Cir. 1997) (IIAIRA eliminated all district court discretion over deportation issues); United States v. Okoko, 365 F.3d 962 (11th Cir. 2004) (invalidating a provision of a supervised release order which tolled the supervised release period while the defendant was outside the United States, because this provision was not "reasonably necessary to effect the purposes of sentencing").

Second, seeking asylum in this country is a legally permissible undertaking recognized by the explicit policy of the United States, and asylum claims are routinely granted.[4]  8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section . . . .").  Moreover, because oppressive regimes do not easily permit their citizens to leave the country, many escape by using false papers; doing so does not disqualify them from seeking asylum.  See Kyaw Zwar Tun v. U.S. I.N.S., 445 F.3d 554, 568 (2d Cir. 2006) ("presenting false papers cannot by itself serve as the basis for an adverse credibility finding and denial of

---

[4]  In fact, in 2006, nearly 3,000 Colombian nationals were granted asylum in the United States.  Dept. Homeland Security, Yearbook of Immigration Statistics (2006).  Columbia is consistently one of the top five source countries for asylum seekers and in fiscal year 2003, 36.3% of Colombian asylum seekers were approved.  Ruth Ellen Wasem, U.S. Immigration Policy on Asylum Seekers, Congressional Research Service 18 (2005).

[an asylum] application").

This is not to say that we express any view whatsoever as to Velasquez's asylum claim, which may or may not be meritorious. It is simply to say that a judge may not impose a more severe sentence than he would have otherwise based on unfounded assumptions regarding an individual's immigration status or on his personal views of immigration policy.

Accordingly, we **VACATE** Velasquez's sentence and **REMAND** solely for resentencing consistent with this opinion. On remand, the district court should impose a sentence based on the individualized facts and circumstances of the defendant's case bearing upon the sentencing considerations enumerated in § 3553(a). Rather than reassigning the case to a different judge for resentencing, we are confident that the district court judge will be able to impose a sentence considering only the individualized nature and circumstances of Velasquez's minor violation, recognized by the judge himself as de minimus, without reliance on Velasquez's immigration status.

**VACATED AND REMANDED.**