[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 24, 2008
THOMAS K. KAHN
CLERK

No. 08-11451
Non-Argument Calendar

_____

D. C. Docket No. 06-00017-CR-3-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OSCAR GARCIA-GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 24, 2008)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Oscar Garcia-Gomez appeals his sentence of ten months' imprisonment

imposed on revocation of his supervised release. After review, we affirm.

## I. BACKGROUND

In 2006, Garcia-Gomez, a Mexican citizen, pled guilty to one count of bringing in and harboring aliens, in violation of 18 U.S.C. § 1324(a)(1)(A)(iv). The district court sentenced Garcia-Gomez to six months' imprisonment and three years of supervised release and ordered him to pay a fine.

After serving his prison term, on or about December 22, 2006, Garcia-Gomez was deported to Mexico and began serving his supervised release term. The conditions of Garcia-Gomez's supervised release included, inter alia, that Garcia-Gomez: (1) would not commit another crime; (2) would pay the court-ordered fine; and (3) would report to the probation office within 72 hours of his release from custody and, if deported, within 72 hours of his return to the United States.

On June 15, 2007, Garcia-Gomez's probation officer filed a petition to revoke his supervised release, charging that Garcia-Gomez: (1) had been found in the United States without lawful authority, in violation of 18 U.S.C. § 1326; (2) had willfully failed to pay the court-ordered fine; and (3) had failed to report to his probation officer after his release from custody.

At the revocation hearing, Garcia-Gomez admitted that he had unlawfully

returned to the United States and failed to contact his probation officer. He also informed the district court that he currently was serving a 46-month sentence relating to charges arising from his illegal re-entry. However, Gomez argued that his failure to pay the fine was not willful because he had not earned enough in Mexico to pay the fine.

It was undisputed that Garcia-Gomez's advisory guidelines range was 4 to 10 months' imprisonment. The statutory maximum sentence was two years' imprisonment.

In mitigation, Garcia-Gomez argued that he returned to the United States after his wife in Mexico had become pregnant and medical complications arose. Garcia-Gomez contended that he could not earn enough money in Mexico to provide for his wife and returned to the United States to work. He also pointed out that he already was serving a 46-month sentence and asked for a four-month sentence. The government asked for a ten-month sentence, noting that Garcia-Gomez re-entered the United States on May 20, 2007, only months after his release and deportation.

The district court found, based on Garcia-Gomez's admissions, that he had violated the conditions of his supervised release. The court imposed a 10-month sentence to be served consecutively to the 46-month sentence Garcia-Gomez was

serving for illegal re-entry.  In so doing, the district court stated:

> I don't see these type cases as demanding extremity in the sentences, but when one defies and deliberately ignores the law and the judgment of the court and returns after having been sentenced, it requires accelerated severity of action, and the court believes that's justified in this case.  And if he's back here again it will be more severe next time.  My view is when you get in a situation like that, my daddy taught me that the first time was a mistake, the second time was a coincidence, and the third time was a habit.  This falls in the habit category.  It's just the sort of case where you ratchet up the sentence every time he comes back.

The district court also stated that "somehow you got to stop this situation."  Garcia-Gomez objected that the sentence was unreasonable under 18 U.S.C. § 3553.  The district court responded that it had considered all the § 3553(a) factors and had given its reasons for the sentence.  Garcia-Gomez filed this appeal.

## II.  DISCUSSION

On appeal, Gomez argues that his ten-month sentence was procedurally and substantively unreasonable.[1]

Upon finding by a preponderance of the evidence that a defendant violated a condition of supervised release, the district court may revoke the term of supervised release and impose a term of imprisonment after considering various

---

[1]We review a sentence imposed upon revocation of supervised release for reasonableness.  United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008).

4

factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(e).[2] The district court

also must consider the policy statements in Chapter 7 of the Sentencing Guidelines,

one of which provides recommended, non-binding ranges of imprisonment.

United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006). The party challenging

the sentence bears the burden of showing that it is unreasonable. United States v.

Talley, 431 F.3d 784, 788 (11th Cir. 2005).

With a Grade B violation and a criminal history category of I, Garcia-

Gomez's recommended guidelines range under advisory Chapter 7 was 4 to 10

months' imprisonment. See U.S.S.G. § 7B1.4(a).[3] Garcia-Gomez's maximum

statutory term of imprisonment upon revocation of supervised release was 2 years.

See 18 U.S.C. § 3583(e)(3).

We cannot say Garcia-Gomez's 10-month sentence, within the advisory

guidelines range, was unreasonable. The district court considered the § 3553(a)

factors, including Garcia-Gomez's history and characteristics; the severity of

Garcia-Gomez's violations, in particular his new criminal offense of illegal re-

---

[2]Factors the district court considers include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the need to provide the defendant with education, medical care or treatment or other correctional treatment, the kinds of sentences and sentencing range, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(6).

[3]Garcia-Gomez does not dispute the calculation of his advisory guidelines range of 4 to 10 months' imprisonment.

entry; and the need to deter Garcia-Gomez from future criminal conduct.

We reject Garcia-Gomez's claim that the district court applied a blanket rule that sentences should be increased each time an illegal alien reenters the United States. The district court's individualized assessment is evidenced by the court's statement that normally offenses such as Gomez's did not require extremity in sentencing, but that Gomez's defiance of the law warranted a sentence harsher than that which the court might otherwise impose. Also, contrary to Garcia-Gomez's assertion, the district court considered the 46-month sentence Garcia-Gomez was already serving. Not only did the court listen to Garcia-Gomez's argument with regard to the 46-month sentence, but the district court specifically indicated that its 10-month sentence was to be served consecutively to that 46-month sentence. Finally, the district court's articulation of the reasons for the 10-month sentence were sufficient to permit review.[4]

**AFFIRMED.**

---

[4]The parties agree that the oral judgment at Garcia-Gomez's original sentencing reflected a $500 fine, while the written judgment reflected a $1,000 fine, and ask this Court to remand the case so the district court may correct this clerical error pursuant to Federal Rule of Criminal Procedure 36. Because Garcia-Gomez has not appealed from the November 8, 2006, judgment, it is not properly before us. However, our affirmance in no way prejudices Gomez's ability to file a Rule 36 motion in the district court to correct the error.