[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16956
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-00054-CR-003-HL-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHAD FREEMAN,
a.k.a. O.Z.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(July 7, 2009)

Before TJOFLAT, EDMONDSON and HULL, Circuit Judges.

PER CURIAM:

Chad Freeman appeals his 30-month sentence imposed upon revocation of his supervised release under 18 U.S.C. § 3583(e)(3). Freeman argues that his sentence, which was above the advisory guidelines range, was unreasonable. After review, we affirm.

## I. BACKGROUND

### A. Original Sentencing and Supervised Release

In 1999, Freeman pled guilty to knowingly distributing cocaine base. At sentencing, the district court granted Freeman's request for a downward departure from the guidelines range of 188 to 235 months' imprisonment and imposed a 110-month sentence, to be followed by a term of 5 years' supervised release. Freeman's terms of supervised release included, inter alia, that Freeman: (1) "shall not commit another federal, state or local crime" ("mandatory condition"); (2) "shall not leave the judicial district without the permission of the court or probation officer" ("standard condition 1"); (3) "shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer" ("standard condition 9"); and (4) shall participate in substance-abuse testing ("special condition").

Later, the district court granted the government's motion pursuant to Federal Rule of Criminal Procedure 35(b) and reduced Freeman's sentence to 84 months'

imprisonment, although his supervised release term remained unchanged.  In November 2007, Freeman began his term of supervised release.

**B.      Petition for Revocation of Supervised Release**

On November 12, 2008, Freeman's probation officer petitioned for revocation of his supervised release, alleging that Freeman had committed five violations.  Specifically, the petition alleged that Freeman: (1) left the district and traveled to Atlanta, Georgia, without the approval of his probation officer, for purposes of making a music CD, in violation of standard condition 1; (2) associated on July 16, 2008, with an individual who was convicted of a felony drug offense, in violation of standard condition 9; (3) associated on November 4, 2008, with an individual who was convicted of a felony drug offense, in violation of standard condition 9; (4) failed to comply with substance-abuse testing by submitting a diluted urine sample in order to avoid detection of marijuana use, in violation of the special condition; and (5) committed the offense of disorderly conduct, in violation of the mandatory condition.  As to his disorderly conduct violation, Freeman allegedly shouted expletives at his probation officer, threw and hit objects, and made threatening advances toward his officer.

The probation officer's  revocation report ("RR") concluded that Freeman's violations were Grade C violations, pursuant to U.S.S.G. § 7B1.1(a)(3)(A) and

(a)(3)(B). With a criminal history category of VI, the RR calculated an advisory guidelines imprisonment range of 8 to 14 months. The RR noted, however, that an upward departure was permissible, pursuant to U.S.S.G. § 7B1.4 cmt. n.4, because Freeman's original 84-month sentence was the result of a downward departure and a Rule 35(b) reduction.

## C.    Revocation Hearing

At an evidentiary hearing, the government detailed the five allegations enumerated in the petition. Freeman left the middle district of Georgia in June 2008 without the permission of the probation office. When confronted about his absence, Freeman admitted that he had traveled to Atlanta, Georgia to make a music CD. On July 16, 2008 and November 4, 2008, Freeman associated with convicted felons, both of whom had prior felony drug convictions. Freeman submitted a diluted urine sample in an effort to conceal his use of marijuana. Finally, Freeman committed the crime of disorderly conduct during a visit with a probation officer, when he become angry, cursed at the probation officer, threw and hit objects, and made threatening advances toward the officer. At a later date, Freeman admitted that his conduct was so severe that the probation officer was forced to reach for a pistol.

Freeman admitted these allegations before the district court. He also

4

attempted to explain, through counsel, some of his conduct. With respect to leaving the district without permission, Freeman explained that he previously requested to move to Atlanta to live with his sister, but the request was denied on grounds that the living arrangement was not a stable home environment. Music was extremely important to Freeman, and he traveled to Atlanta because he had an opportunity there to meet with a record producer to distribute music that he recorded over several years. Freeman understood that he was not supposed to travel to Atlanta, but he hoped to "create a better life for himself."

Regarding his associations with convicted felons, Freeman stated that he was moving to another residence, and the men helping him move were convicted felons. Freeman pointed out that he did not relax, "hang[] out," drink alcohol, or use drugs with these men. In response to the court's inquiry, Freeman, through counsel, confirmed that he understood that he was not to associate with convicted felons. However, Freeman believed that his conduct was acceptable because the convicted felons with whom he associated helped him accomplish something, and they did not simply socialize with him.

As to the allegation that he submitted a diluted urine sample, Freeman admitted to consuming several bottles of water in an effort to avoid marijuana detection. Regarding the disorderly conduct allegation, Freeman admitted that he

5

was disorderly, but denied hitting anything other than his own fist. Freeman also apologized for losing control of his temper. Freeman further stated that he was working and supporting his two children, even though he walked everywhere because he did not have a driver's license. Freeman, himself, then addressed the court and asked for mercy.

The district court found that Freeman violated the terms of his supervised release. The district court noted that Freeman's advisory guidelines range was 8 to 14 months, but concluded, after considering chapter 7 of the Sentencing Guidelines, that a sentence within the advisory guidelines range was inadequate. The district court imposed a 30-month sentence.

In making its sentencing decision, the district court noted that, at the time of his original conviction, Freeman had an extensive criminal history, including convictions for simply battery, driving under the influence, simple possession of marijuana, carrying a concealed weapon, carrying a pistol without a license, obstruction of an officer by resisting and fighting, and possession with intent to distribute cocaine. The court further noted that Freeman was placed on probation several times and that his probation was revoked repeatedly because Freeman failed to abide by the terms and conditions of his probation.[1] While the court

[1]According to Freeman's presentence investigation report ("PSI") at his original sentencing, Freeman previously violated the conditions of his probation multiple times.

6

acknowledged Freeman's explanations for his current violations, it found that the explanations did not justify Freeman's conduct. The court emphasized that Freeman knew he was not to go to Atlanta and was not to associate with convicted felons and that Freeman used marijuana and attempted to avoid detection. As to the anger he directed toward the probation office, the district court stated that Freeman's frustration did not excuse his actions and that his actions were "very dangerous" and illegal.

The district court concluded that the 30-month sentence was warranted given the seriousness of the violation conduct, Freeman's previous criminal history and his violent conduct. Freeman objected and argued that he: (1) had not committed any new crime or hurt anyone; (2) was working, taking care of his children and trying to pursue a music career; and (3) used marijuana only one time and was not selling drugs or "toting pistols." In response, the district court stated that the sentence was justified given Freeman's criminal history category of VI, his five serious violations of the conditions of his supervision and his admission to understanding, while committing those violations, that his conduct was wrong. Freeman filed this appeal.

## II. DISCUSSION

"Pursuant to 18 U.S.C. § 3583(e), upon finding that the defendant violated a

condition of supervised release, a district court may revoke the term of supervised release and impose a term of imprisonment after considering the specific factors set forth in 18 U.S.C. § 3553(a)."[2] United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008). The district court must also consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which provides recommended, non-binding ranges of imprisonment. United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006).

"We review the sentence imposed upon the revocation of supervised release for reasonableness." Velasquez Velasquez, 524 F.3d at 1252. A reasonableness review is synonymous with the abuse of discretion standard and uses a two-step process. Gall v. United States, 552 U.S. 38, ___, 128 S. Ct. 586, 594 (2007); United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden of showing that it is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th

_____

[2]The factors the district court considers include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the kinds of sentences and sentencing range established by the Guidelines; and, in the case of a violation of supervised release, (5) the applicable Guidelines or policy statements issued by the Sentencing Commission. 18 U.S.C. § 3553(a); United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006).

Cir. 2005).

When a sentencing judge decides to impose a sentence outside the advisory guidelines range, "he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall, 552 U.S. at ___, 128 S. Ct. at 597. "Sentences outside the guidelines are not presumed to be unreasonable, be we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009).

Here, the sentence was procedurally reasonable. The district court correctly calculated the advisory guidelines range, considered the § 3553(a) factors and, contrary to Freeman's claims, gave an adequate explanation for the chosen sentence.

Freeman also has not carried his burden to show his 30-month sentence was substantively unreasonable. Freeman argues that the district court failed to properly consider his character, especially his contrition for his actions, his prompt admissions and his previous cooperation with the government. Freeman also argues generally that the above-guidelines sentence is too harsh and not "just punishment."

Freeman has an extensive criminal history and a track record for failing to comply with the conditions of probation. In this instance, he knowingly violated

9

five conditions of his supervised release. Furthermore, Freeman became angry and threatening to his probation officer when he was confronted about it, which prompted the probation officer to draw his pistol. Freeman, who was convicted of a drug offense, also admits to trying to hide his drug use from his probation officer by diluting his urine before a drug screen. The district court had the discretion to give greater weight to these factors than to Freeman's character or to the other arguments Freeman made in mitigation. Taking the record as a whole, the district court concluded that the upward variance was necessary to protect the public and deter Freeman from committing future crimes. Under the totality of the circumstances, we cannot say the district court abused its discretion when it imposed a 30-month sentence, above the advisory guidelines range of 8 to 14 months.

**AFFIRMED.**