[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14734
Non-Argument Calendar
_____

D.C. Docket No. 3:02-cr-00012-CAR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHERWIN HOWARD,
a.k.a. Weezer,
a.k.a. Sug,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(April 16, 2013)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Sherwin Howard appeals his 60-month sentence imposed upon revocation of his supervised release. On appeal, Howard argues that his counsel during the revocation proceedings was ineffective and that his sentence is unreasonable. After review, we affirm.

## I.  BACKGROUND

### A.    Petition for Revocation of Supervised Release

In 2002, Defendant Howard pled guilty to unlawful possession with intent to distribute crack cocaine and was sentenced to 170 months in prison, followed by 5 years of supervised release. Later, Howard's sentence was reduced to 120 months, pursuant to 18 U.S.C. § 3582(c)(2). On November 10, 2011, Howard completed his prison term and began supervised release.

On February 13, 2012, Defendant Howard's probation officer petitioned the district court for a warrant to arrest Howard and to revoke his supervised release. The petition charged that Howard had violated the terms of his supervised release by, on February 6, 2012, committing the offenses of aggravated assault, battery, cruelty to children, and criminal trespass-damage to property. According to the probation officer's revocation report, these offenses occurred when Defendant Howard physically attacked his wife at their shared residence while their two sons were present.

2

The district court issued an arrest warrant, which was executed by the U.S. Marshals on February 14, 2012.  The revocation report stated that, because Howard had committed a Grade A violation and his criminal history category at the time of his original offense was VI, his recommended imprisonment range was 51 to 63 months, under U.S.S.G. § 7B1.4.  Howard did not object to these calculations.

## B.    Revocation Hearing

At the outset of the revocation hearing, the government asked to place on the record a plea offer Defendant Howard had rejected.  The prosecutor stated that if Howard admitted to the battery and cruelty to children offenses, the federal prosecutor agreed to not make a sentencing recommendation at the revocation hearing and the assistant district attorney handling Howard's parallel state case agreed to let the state sentence run concurrent to the federal sentence.  The prosecutor advised the court that Howard's "case at the state level remains viable." Although the prosecutor did not know the penalties for the state offenses, he assumed they would be substantially higher than the five-year sentence Howard faced in federal court.  Defense counsel responded, "just for the record, on the state case, the aggravated assault carries up to 20 years.  The three misdemeanors . . . each carry[ ] up to 12 months."

The district court heard testimony from the victim, Gavrila Howard, and the two police officers who responded at her residence on February 6, 2012.

3

According to their testimony, Defendant Howard hit his wife in the face and head, scratched her neck with an eyebrow shaper (a plastic implement with a small razor at the end), slammed her head into the wall, creating a hole in the drywall, and threw her to the floor, where he stomped and kicked her.  Two children were in the home, and their twelve-year-old son saw his father hit his mother's head on the wall and stomp on her head.  As a result of the attack, Mrs. Howard had bruises on her neck and arm, knots on her head and a cut on her throat and was treated at the emergency room.  Mrs. Howard also reported that on a previous occasion, Defendant Howard punched her and broke several of her ribs.  The government also submitted the eye-witness statements given to the police and police photographs of Mrs. Howard's injuries and damage to the wall and a bedroom door of her residence.

During the hearing, however, defense counsel elicited testimony about inconsistencies in Mrs. Howard's version of events.  For example, although the two officers testified that, on February 6, Mrs. Howard said her husband had brandished a knife at her, Mrs. Howard testified at the hearing that she did not say anything about a knife.  Furthermore, Mrs. Howard admitted visiting her husband's probation officer the morning after the attack and denying that it had happened.  Mrs. Howard explained that she did this because her husband called her repeatedly

4

after the incident begging her to help him, but that she later realized she needed to tell the truth.

In addition, during cross-examination, defense counsel asked Mrs. Howard whether she had appeared at her husband's state bond hearing and denied the attack. In response, Mrs. Howard stated that she did not remember saying that. As a result, defense counsel made a factual proffer that Defendant Howard's attorney at the state bond hearing could testify that Mrs. Howard advised the state court that Defendant Howard did not attack her. Defense counsel explained that, while she did not want to call the state attorney because she was concerned about waiving attorney-client privilege, Defendant Howard disagreed with her and had "issues with the fact that [she] didn't call [his state] lawyer." The district court responded that he understood the "circumstances relating to [Mrs. Howard's] credibility in this case quite well." The district court indicated that, at best, the state attorney's testimony (i.e., that Mrs. Howard had previously said her husband did not attack her) would be cumulative of Mrs. Howard's own testimony.

After the close of the evidence, defense counsel argued,

> Basically what this all boils down to . . . is if the Court believes Miss Howard and the various variations of what she claims has happened to her, one of the things that we see is that she escalates it and then she says it didn't happen and then she says it did and then she says it didn't, all the while Mr. Howard maintains it did not happen. I would . . . suggest to the Court that that's not enough evidence standing on its own to find Mr. Howard guilty of violating his supervised release.

5

After defense counsel's argument, Defendant Howard asked to speak and told the district court that his defense counsel "won't tell you what I want her to tell you." Defense counsel explained that Defendant Howard wanted to tell the court about defense counsel's deficiencies in representing Howard.

After Defendant Howard was advised of the risks of testifying and placed under oath, Defendant Howard stated that, despite his request, defense counsel had not subpoenaed witnesses, including the attorney at Defendant Howard's state bond hearing. The district court then asked Defendant Howard whether he had any witnesses who were present "when this incident allegedly happened," and Defendant Howard indicated he wanted to call his daughter, who picked him up after he left the family residence. Defendant Howard admitted, however, that his wife and two sons were the only other people in the home at the time and his daughter did not see what happened.

Defense counsel explained that, although Howard's daughter was waiting in the hallway, defense counsel had made "a tactical decision" not to call the two witnesses Howard requested, as follows:

> There is ample evidence that Miss Howard made varying statements to people and told people that Mr. Howard had not hit her, and I felt that that evidence was cumulative and, quite frankly, not going to be helpful to [Defendant Howard's] case given Miss Howard's position in all of this.
>
> In addition to that, Your Honor, as I expressed earlier when I made the proffer as to Miss Howard being at the bond hearing, again,

6

that evidence went to Miss Howard has made statements that this did not happen.

The district court responded, "Well, you've been in my Court long enough to know that I don't like cumulative evidence."  The district court then explained to Defendant Howard what was meant by cumulative evidence, that it was excludable under Federal Rule of Evidence 403, and that defense counsel had decided not to call his daughter because defense counsel thought it was going to be cumulative. Defendant Howard indicated that he understood.  The district court further stated that it would accept defense counsel's factual proffer—that the attorney at the state bond hearing would say that Mrs. Howard denied any attack to the state court—"as evidence in this case," but that "the best witness in terms of statements that are inconsistent is your wife over there who has said over and over again, yeah, that's what she told [the probation officer]."

The district court found that the testimony of the two officers and Mrs. Howard was credible and that Defendant Howard committed the four alleged offenses.  With respect to Mrs. Howard's credibility, the district court found that she did on more than one occasion contradict herself about what happened, but that this did not "destroy[ ] her overall credibility" at the hearing.

## C.    Sentencing

At a separate sentencing hearing, Defendant Howard requested a 51-month sentence, at the low end of the recommended range of 51 to 63 months.  The

7

government requested (1) a 60-month sentence, the statutory maximum, and (2) that the sentence run consecutive to any state sentence.

Defendant Howard objected to a consecutive sentence, arguing that the district court did not have the authority to impose a consecutive sentence when Defendant Howard had not yet been indicted in state court and might receive a sentence for "different behavior and not behavior contemplated as part of this revocation." The district court stated that, although there was no state criminal case number yet, "there ought to be some way to fashion the judgment in this case so that it's very clear that this sentence will run consecutive to" any state sentence based on the same conduct. The government responded, "Your Honor, the only case that the government is talking about is the one that occurred on February 6, 2012, which is the one the Court heard the testimony about. We are not talking about anything else that Mr. Howard may have done or may do in the future."

The district court then imposed a 60-month sentence, to run consecutive to any state sentence that arises "based on the conduct on that day . . . . if that turns out to be a case that's indicted and tried." The district court also stated that the sentence imposed complied with the 18 U.S.C. § 3553(a) factors and adequately addressed the totality of the circumstances.

At the conclusion of the hearing, defense counsel requested that the district court appoint new counsel to represent Defendant Howard on appeal because

8

Defendant Howard wanted to raise an ineffective assistance of counsel claim against her. The district court granted the request, and Howard timely appealed his sentence.

## II. DISCUSSION

### A.    Ineffective Assistance of Counsel

Although ordinarily we do not review ineffective assistance claims on direct appeal, we address Defendant Howard's claim because it was raised in the revocation proceedings, and the district court was able to sufficiently develop the record. See United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (stating that we will consider an ineffective assistance claim if the record is sufficiently developed in the district court). Whether a criminal defendant's counsel was ineffective is a mixed question of law and fact that we review de novo. Id.

To establish ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To establish deficient performance, the defendant must show that his counsel's representation fell below an objective standard of reasonableness. Id. at 688, 104 S. Ct. at 2064. To do this, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. Which witnesses, if any,

9

to call "is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Here, Defendant Howard did not show that his defense counsel's representation during the revocation proceedings was deficient or that he suffered any prejudice as a result of defense counsel's decision not to call two witnesses—the daughter and the attorney at the state bond hearing—that Howard wanted. Defense counsel explained that she did not call these two witnesses as a matter of strategy because she believed (correctly) that the district court would view these witnesses' testimony as cumulative of other evidence of Mrs. Howard's changing version of events. In fact, Mrs. Howard admitted she had changed her story.

With respect to Howard's lawyer at the state bond hearing, defense counsel additionally was concerned about attorney-client privilege. Therefore, instead of calling this witness, defense counsel made a factual proffer of what the state lawyer would have testified, which the district court accepted. Indeed, in ruling on the revocation petition, the district court found that on several occasions Mrs. Howard had denied that her husband attacked her. Under these circumstances,

10

Defendant Howard has not shown that his counsel's strategic decision not to call these witnesses was objectively unreasonable or that, had these two witnesses testified, the outcome of his revocation proceeding would have been different.

## B.    Reasonableness

Howard contends that the district court's decision to run his 60-month federal sentence consecutive to any as yet unimposed state sentence rendered his sentence unreasonable.

Pursuant to 18 U.S.C. § 3583(e), upon finding that the defendant violated a condition of supervised release, a district court may revoke a term of supervised release and impose a term of imprisonment after considering the specific factors set forth in 18 U.S.C. § 3553(a).[1]  The district court must consider the policy statements in Chapter 7 of the Sentencing Guidelines, one of which, U.S.S.G. § 7B1.4, provides recommended, non-binding ranges of imprisonment.  United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006); U.S.S.G. § 7B1.4.

"We review the sentence imposed upon revocation of supervised release for reasonableness."  United States v. Velasquez Velasquez, 524 F.3d 1248, 1252

---

[1]Specifically, in a revocation proceeding, the relevant factors the district court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence, protect the public and provide the defendant with needed educational or vocational training or medical care; (3) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution.  See 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7)).

(11th Cir. 2008). Our reasonableness review applies the deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007). In reviewing for reasonableness, we first consider whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).[2] The party challenging the sentence has the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

The parties do not dispute that, with a Grade A violation and a criminal history category of VI, Howard's recommended guidelines range under advisory Chapter 7 was 51 to 63 months. See U.S.S.G. § 7B1.4(a)(2) (providing for increased ranges "[w]here the defendant was on probation or supervised release as a result of a sentence for a Class A felony"). Howard's statutory maximum prison term upon revocation was five years. See 18 U.S.C. § 3583(e)(3).

The Supreme Court recently concluded, consistent with this Circuit's longstanding precedent, that the district court "has authority to order that the

---

[2]We note that Howard does not argue that his 60-month sentence—apart from its consecutive nature—is unreasonably long. Moreover, it is unclear from Howard's appeal brief whether his challenge to the reasonableness of his consecutive federal sentence is procedural or substantive. To the extent Howard argues the district court lacked authority to impose the federal sentence consecutive to a future state sentence, he appears to be raising a procedural error. In any event, Howard has not shown that his consecutive federal sentence is procedurally or substantively unreasonable.

federal sentence be consecutive to an anticipated state sentence that has not yet been imposed." Setser v. United States, 566 U.S. ___, 132 S. Ct. 1463, 1466 (2012); see also United States v. Andrews, 330 F.3d 1305, 1306-07 (11th Cir. 2003); United States v. Ballard, 6 F.3d 1502, 1507-10 (11th Cir. 1993).  Moreover, in Setser, the Supreme Court concluded that such a consecutive sentence was reasonable.  See Setser, 132 S. Ct. at 1472.

Howard attempts to distinguish Setser and our precedent, arguing that, unlike the defendants in those cases, Howard had not yet been indicted for any state offenses.  This argument, however, ignores that the courts in Setser and our precedent did not know whether the indicted defendant would plea or be found guilty or what sentence would be imposed, and if so, what its actual duration would be.  Knowing whether the state would indict Howard still would not tell the district court what the outcome as to guilt would be or what the sentence would be.  Thus, Howard's case is not materially different from Setser and our precedent.[3]

In any event, despite not having this information, courts routinely weigh the § 3553(a) factors to produce reasonable sentences set to run consecutive to possible state sentences.  See, e.g., id.; Andrews, 330 F.3d at 1306-07 (concluding that district court did not abuse its discretion in imposing a federal sentence consecutive to a future state sentence).  Importantly, the record reflects that the

---

[3]There is still no indication that a state prosecution has occurred, much less any state sentence, based on the conduct alleged in Howard's revocation petition.

district court was aware of the maximum state penalties Howard potentially faced should the state proceed with prosecution for his underlying criminal conduct, and the district court nevertheless expressed its clear intent to make Howard's federal sentence run consecutive to any state sentence he might receive for the same conduct.

Under the circumstances of this particular case, we cannot say the district court abused its discretion when it imposed a 60-month sentence to be served consecutive to any as yet unimposed state sentence for the same underlying criminal conduct.

**AFFIRMED.**