[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10818
Non-Argument Calendar
_____

D.C. Docket No. 2:00-cr-14057-DLG-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENNIE WILEY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 16, 2017)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Bennie Wiley appeals the district court's revocation of his supervised release for committing armed trespassing, under Fla. Stat. § 810.08(2)(c).  On appeal, Wiley argues that he did not commit armed trespassing because his girlfriend Ashley Tate consented to him being there, and because his folding knife, an approximately three-inch blade, was not a "dangerous weapon" for purposes of § 810.08(2)(c).  After a careful review of the record and the parties' briefs, we affirm.

## I.

"We . . . review a district court's revocation of supervised release for an abuse of discretion."  *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008) (per curiam).  The district court may revoke a defendant's term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of [his] supervised release."  18 U.S.C. § 3583(e)(3).  We review a district court's factual findings for clear error.  *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993).  Further, a district court's choice between two permissible views of the evidence cannot be clear error. *United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006).  Substantial deference is afforded to a factfinder's credibility determinations.  *See United States v. McPhee*, 336 F.3d 1269, 1275 (11th Cir. 2003).

2

II.

In determining whether a violation of Florida state law occurred, federal courts are "bound by Florida courts' determination and construction of the substantive elements of that state offense." *See United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012). Under Florida law, a defendant commits armed trespassing when he, while armed with a "firearm or other dangerous weapon," willfully enters or remains in a structure without authorization or, having been authorized to enter, is warned to depart and refuses to do so. Fla. Stat. § 810.08(1), (2)(c); *Mitchell v. State*, 698 So. 2d 555, 559 (Fla. Dist. Ct. App. 1997). Florida law recognizes consent as an affirmative defense to trespassing. *See Haugabrook v. State*, 827 So. 2d 1065, 1069 (Fla. Dist. Ct. App. 2002). However, consent may be revoked through an "actual communication," and a defendant who remains after consent has been revoked is a trespasser. *See Smith v. State*, 778 So. 2d 329, 330–31 (Fla. Dist. Ct. App. 2000).

Moreover, although Florida's armed-trespassing statute does not define the term "dangerous weapon," we may look to several other instruments to glean its meaning. *See* Fla. Stat. § 810.08. The standard Florida jury instruction for armed trespassing defines a "dangerous weapon" as "any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm." Fla. Std. Jury Insr. (Crim.). 13.3 Trespass. And the definition section of the

3

weapons and firearms chapter of Florida's criminal code defines a "weapon" as "any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon *except* a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife."   Fla. Stat. § 790.001(13) (emphasis added).  In *L.B. v. State*, the Florida Supreme Court interpreted § 790.001(13) in connection with a 1951 opinion from the Attorney General of Florida, which stated that a "common pocketknife" was a pocketknife with a blade of four inches or less, to determine that the under-four-inch-bladed folding knife at issue in that case was a "common pocketknife."  700 So. 2d 370, 371, 373 (Fla. 1997).  However, the Fifth District Court of Appeal has determined that the rule in *L.B. does not apply* when the pocketknife is in the open position.  *See Porter v. State*, 798 So. 2d 855, 856 (Fla. Dist. Ct. App. 2001); *see also Walls v. State*, 730 So. 2d 294, 295 (Fla. Dist. Ct. App. 1999) (stating that, to the extent *L.B.* established a *per se* rule, the rule only applied where the defendant established that his knife was four inches or less and in the folded position).  Further, the Fifth District Court of Appeal has determined that, even where a pocketknife may otherwise fall within the "common pocketknife" exception, the rule in *L.B.* does not apply and the pocketknife may qualify as a "deadly weapon" where the pocketknife was used as a weapon.  *Martin v. State*, 747 So. 2d 474, 474 (Fla. Dist. Ct. App. 1999).

4

III.

Here, the district court did not clearly err in determining that Wiley was a trespasser. Tate's testimony showed that, even though Wiley initially was welcome at her house, she twice told him to leave her house and he remained after being asked to leave. Tate revoked her consent, and by remaining after that revocation, Wiley was trespassing. *See Smith*, 778 So. 2d at 330–31. The fact that he refused to leave and stayed in the house overnight has no bearing on the fact that Tate revoked her consent. Furthermore, the district court did not clearly err in determining that Wiley's folding knife was a "dangerous weapon" and that it did not fall within the "common pocketknife" exception. Wiley wielded the knife at Tate when it was in the open position in an attempt to scare and confine her. Moreover, the knife cut Tate when she tried to take it from Wiley. Thus the "common pocketknife" exception established in *L.B.* is not applicable. See *Porter*, 798 So. 2d at 856; *Martin*, 747 So. 2d at 474. And because the court's view of this evidence is a permissible one, it cannot be deemed clear error. *See Ndiaye*, 434 F.3d at 1305.

**AFFIRMED.**