[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12101
Non-Argument Calendar
_____

D.C. Docket No. 1:06-cr-20397-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREEM JACKSON,
a.k.a. Jamar Fields,
a.k.a. Face,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 13, 2017)

Before ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Kareem Jackson appeals his 24-month sentence of imprisonment following

the revocation of his supervised release, pursuant to 18 U.S.C. § 3583(e)(3).  On

appeal, Jackson argues that his sentence is substantively unreasonable because the supervised-release violations proved by the government were minor and did not warrant an upward variance from the guideline range of 6 to 12 months. The court's decision to vary upward, Jackson contends, indicates that the court improperly relied on more substantial, but unproven, conduct alleged by the government. After careful review, we affirm.

In 2007, Jackson pled guilty to holding a person in peonage, in violation of 18 U.S.C. § 1581(a). According to the plea colloquy, Jackson held a minor to a condition of involuntary servitude and compelled her to work for him as a prostitute until she could repay $800 that Jackson claimed she owed him. For this offense, Jackson was sentenced to 84 months of imprisonment followed by three years of supervised release. Jackson began serving his term of supervised release on July 19, 2012.

In March 2013, the district court granted the U.S. Probation Office's petition to modify the terms of supervised release to include a search condition. In October 2013, the court granted Probation's petition to modify the terms of supervised release to include participation in a sex-offender treatment program and location monitoring for 90 days. In that petition, Probation alleged that had Jackson violated the conditions of his supervised release by twice submitting a urine specimen which tested positive for cocaine.

In February 2014, Jackson admitted to unspecified violations of his supervised release. On April 10, 2014, following a hearing, the district court "revoked" Jackson's supervised release and resentenced him to a three-year term of supervised release, but no imprisonment. At that time, the court relieved Jackson of his obligation to participate in a sex-offender treatment program but ordered him to attend an anger-management program.

About six months later, in October 2014, Probation petitioned the district court to revoke Jackson's supervised release. Probation alleged that Jackson had committed the offenses of sexual battery, robbery, and burglary (Violations 1–3), and had failed to maintain full-time employment (Violation 4). In a superseding petition, Probation added that Jackson had failed to give notice of his change in residence from Virginia to Indiana (Violation 5). On October 26, 2015, over a year after the court issued a warrant for his arrest, Jackson was arrested in Indianapolis, Indiana.

A magistrate judge held an evidentiary hearing on the revocation petition in December 2015. For Violations 1–3, the government alleged that a victim had reported that Jackson attacked her with pepper spray and then invaded her vaginal cavity in search of cash. The government claimed that the victim was afraid to testify, however, so it sought to rely on hearsay statements from the victim through the testimony of others. Jackson objected to the use of hearsay to sustain the

violations. Ultimately, the magistrate judge found that live testimony from the victim was necessary for Violations 1–3. Accordingly, the magistrate judge recommended that Violations 1–3 be denied and dismissed, but that Violations 4 and 5, which Jackson had conceded, be sustained. The district court adopted the magistrate judge's recommendation over the government's objections.

At the sentencing hearing, the district court announced the guideline range (6 to 12 months of imprisonment) and the statutory maximum term (24 months of imprisonment). Then, the court recounted Jackson's supervised-release history, noting that the court had extended his supervised release in April 2014 to give him an opportunity to demonstrate "that he's not as bad a guy as he appears to be." "And now here we are again," the court said, "and for technical reasons, Mr. Jackson has escaped three of his violations and he has two violations that have stuck."

The district court specifically addressed one of the violations that had "stuck"—Jackson's failure to notify Probation of his change of address. In the court's view, this violation was an "aggravating factor" because Jackson did not just fail to notify Probation of a change of address. Rather, he had effectively absconded to Indiana from Virginia, where he had previously resided. Probation could have but did not charge Jackson's change in jurisdiction as a separate violation, because it would not have affected the guideline range, but the court

4

suggested that Probation do so in the future because it "certainly might change someone's perspective on the defendant."

The government recommended the two-year maximum term of imprisonment with an additional term of supervised release to follow. The government suggested that the court could take into account Violations 1–3, but also noted that Jackson had been hostile toward Probation throughout his time on supervised release.

Jackson contended that the district court could not consider Violations 1–3. And, in Jackson's view, imposing the statutory maximum was "really to punish him for the charges that have been dismissed." The district court responded, "Well, or to punish him for having been such a pain on supervision." The court elaborated that it had given Jackson a chance and that he "blew it," having "managed to find [his] way back here again for whatever reason, including, in [the court's] view, absconding to Indianapolis." Consequently, the court varied upward and imposed a two-year sentence with no supervised release to follow. Jackson objected to the court's sentence and findings of fact, and he now brings this appeal.

We review the sentence imposed upon revocation of supervised release for reasonableness. *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008). We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Trailer*, 827 F.3d 933, 935–36 (11th Cir.

5

2016).  The party who challenges the sentence bears the burden of showing it is unreasonable.  *Id.*

If a defendant violates a condition of his supervised release, the district court may revoke a defendant's supervised release and impose a prison term.  18 U.S.C. § 3583(e)(3).  When sentencing a defendant upon revocation of supervised release, the district court must consider the following § 3553(a) factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for deterrence, protection of the public, and rehabilitation; (3) the guideline range and the kinds of sentences available; (4) any pertinent policy statements; (5) the need to avoid sentencing disparities; and (6) the need to provide restitution to any victims.  *See* 18 U.S.C. §§ 3583(e), 3553(a)(1), (a)(2)(B)–(D), & (a)(4)–(7).  The court may, in its discretion, give greater weight to some factors over others.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).  And the court may vary above the range established by the Sentencing Guidelines.  *United States v. Silva*, 443 F.3d 795, 799 (11th Cir. 2006).

We may not presume that a sentence outside the guideline range is unreasonable, and we must give due deference to the district court's decision that the § 3553(a) factors justify the extent of the variance.  *United States v. Irey,* 612 F.3d 1160, 1186–87 (11th Cir. 2010) (*en banc*) (stating that the justification given should be sufficiently compelling to support the degree of variance).  We will

vacate a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* at 1190 (quotation marks omitted); *Trailer*, 827 F.3d at 936.

Here, the district court's decision to impose a two-year sentence of imprisonment with no supervision to follow was a permissible exercise of its discretion. We find not support in the record for Jackson's contention that the court impermissibly relied on unproven conduct in varying above the guideline range. Although the parties discussed this conduct, it played no role in the court's explanation of its reason for the variance, and the court expressly rejected defense counsel's suggestion that a two-year term could have been warranted only if the unproven conduct were considered. The court explained that the reason for the upward variance was because Jackson had blown the chance the court gave him in April 2014, when the court extended his term of supervision rather than ordering imprisonment. In the court's view, Jackson had been a "pain" to Probation, as even defense counsel acknowledged, and he had "managed to find [his] way back here again for whatever reason, including . . . absconding to Indianapolis."

The record amply supports the district court's determination that a sentence at the statutory maximum of 24 months of imprisonment was necessary to sanction

Jackson for his breach of the court's trust and his disregard for the conditions of his supervised release. *See* U.S.S.G. Ch. 7, Pt. A, intro. cmt. 3(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). In April 2014, after Jackson admitted to violating the conditions of his first term of supervised release, the court gave him a chance, despite the seriousness of his underlying conduct, and extended his term of supervised release for three years. Around six months later, Probation petitioned to revoke his supervised release. But Jackson was not found until over a year after the arrest warrant issued, having effectively absconded to another state. In light of these facts, we do not find that the district court abused its discretion in concluding that an upward variance was appropriate. *See Irey*, 612 F.3d at 1190; *Silva*, 443 F.3d at 799 (finding that an upward variance was warranted based on the defendant's numerous probation violations);

For these reasons, we affirm Jackson's sentence.

**AFFIRMED.**