[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-11508
Non-Argument Calendar

————————————————

D.C. Docket No. 1:13-cr-00357-ODE-JFK-11

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES CORY LINDER,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(August 2, 2019)

Before WILSON, MARTIN, and JULIE CARNES, Circuit Judges.

MARTIN, Circuit Judge:

James Cory Linder appeals his twenty-four-month prison sentence, imposed upon revocation of his supervised release. At the revocation hearing, the district court centered its attention on Linder's drug addiction and how he would benefit

from incarceration, because it would impede his access to drugs. The government concedes the district court violated <u>Tapia v. United States</u>, 564 U.S. 319, 131 S. Ct. 2382 (2011) in this way. After careful review, we agree with Linder that this plain error should be corrected. We therefore vacate and remand for resentencing.

## I. BACKGROUND

Linder was originally sentenced to twenty-four months imprisonment and three years of supervised release in June 2014, after he pled guilty to one count of conspiring to possess with the intent to distribute oxycodone. When serving his initial term of supervised release, he violated the terms, and as a result was reincarcerated with a second term of supervised release to follow. He began serving this second supervised release term in September 2017. But he again violated several terms, though only one violation involved a controlled substance.

Linder admitted as much at the hearing on his supervised release revocation held in March 2018. Because of his violations, Linder's recommended prison sentence range under the United States Sentencing Guidelines was eight to fourteen months imprisonment, with a maximum sentence of twenty-four months. Linder's counsel suggested a sentence of twelve months and one day. The government recommended a sentence of eighteen months. The district court imposed the maximum statutory sentence of twenty-four months.

2

The court opened and concluded its statements "regarding the sentence" with comments about Linder's addiction, his treatment options, and his access to drugs. The court began by saying:

> [E]specially when people are addicted to oxycodone, the first resort should be the therapy and medical treatment. But we've been through that loop . . . . I believe that when treatment efforts have completely failed, as I think they have here, the best recourse is prison, because presumably, while Mr. Linder is in prison, he cannot get these drugs. And that, to me, is the greatest hope that he might be able to shake the addictions that are really driving his life.

Immediately before announcing Linder's sentence, the court again spoke of prison's potential to limit Linder's access to drugs:

> I think at this point, it is certainly indicated that the Court should give a sentence above the guideline range. . . . It's clear to me that what's going to happen when Mr. Linder is out on the streets again is he's going to be using drugs again . . . . I think while sending somebody to prison is, as I said, particularly in an oxycodone situation should not be the first resort. Sometimes it is a last resort, and it will ensure that for 24 months, or whatever sentence I give, that Mr. Linder will not be out on the streets using drugs.

During the hearing, the court also reviewed the offenses listed in the relevant violation report[1] and described Linder's overall criminal history. Some of the court's remarks reflected concerns "both for Mr. Linder's welfare and for the welfare of the community."

---

[1] The district court brought up a car accident related to one of the offenses, though none is mentioned elsewhere in the record before us.

After the court announced Linder's twenty-four-month sentence, defense counsel asked the court to reconsider Linder's sentence. The court denied the request, explaining: "[T]o me, the thing that just drives everything here is the drugs, that's the concern, my big concern."

## II. LEGAL STANDARDS

### A. PROCEDURAL REASONABLENESS

Linder argues his sentence is procedurally unreasonable because the district court improperly based his sentence on the rehabilitative effect of prison.[2] See Tapia, 564 U.S. at 335, 131 S. Ct. at 2393. The Supreme Court held in Tapia that federal courts "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Id. Because rehabilitation is an impermissible sentencing factor, "a court errs by relying on or considering rehabilitation in any way when sentencing a defendant to prison." United States v. Vandergrift, 754 F.3d 1303, 1311 (11th Cir. 2014). The rule announced in Tapia applies to prison sentences imposed upon revocation of supervised release. Vandergrift, 754 F.3d at 1309.

### B. PLAIN ERROR REVIEW

---

[2] Because Linder prevails on his procedural argument, we do not address his alternate challenge to the substantive reasonableness of his sentence.

We normally review for abuse of discretion the reasonableness of a sentence imposed upon revocation of supervised release. United States v. Alberts, 859 F.3d 979, 985 (11th Cir. 2017). But because Linder did not object to the procedural reasonableness of his sentence before the district court, we review this argument for plain error. Vandergrift, 754 F.3d at 1307.

Plain error review is subject to three conditions. See United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993). "First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights." Molina-Martinez v. United States, 578 U.S. ___, 136 S. Ct. 1338, 1343 (2016) (citations omitted). To satisfy the third condition, a defendant must ordinarily "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." Id. (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004)). "Once these three conditions have been met, the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation marks omitted) (quoting Olano, 507 U.S. at 736, 113 S. Ct. at 1779).

### III. DISCUSSION

Both sides agree, and our independent review of the record confirms, that the district court considered the rehabilitative effects of prison during Linder's revocation hearing. The government correctly concedes this was plain error. Alberts, 859 F.3d at 986. This leaves us with only two issues to decide: (1) whether Linder has shown the Tapia error affected his substantial rights; and (2) whether this error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." Vandergrift, 754 F.3d at 1307 (alteration adopted) (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785 (2002)).

A.  EFFECT ON SUBSTANTIAL RIGHTS

The court's statements during the revocation hearing evidence a reasonable probability that its rehabilitation concerns "drove the district court's sentencing decision." See Vandergrift, 754 F.3d at 1312 (quotation marks omitted) (quoting United States v. Bennett, 698 F.3d 194, 200 (4th Cir. 2012)). To begin, the court mentioned its concerns about Linder's drug use as it announced its decision to impose a sentence above the guideline range. And the court's final comment about the sentence it imposed confirms that its "big concern" about "drugs" dictated the length of Linder's sentence. Linder has sufficiently shown that rehabilitation likely was the court's primary concern. The court's comments about drugs invariably reflect concern over Linder's drug use, with only occasional mention of public safety. Further, unlike in the cases the government relies on, Linder's

6

rehabilitative needs here were not "an ancillary concern," <u>Alberts</u>, 859 F.3d at 986, or a "minor fragment of the court's reasoning." <u>Id.</u> (quotation marks omitted) (quoting <u>Vandergrift</u>, 754 F.3d at 1312.) Instead the court's remarks that as "a last resort" prison was Linder's "best recourse" to deal with his drug problem "both led off the discussion and bore [much] of its emphasis." See <u>Bennett</u>, 698 F.3d at 201.

The government stresses that the court mentioned other issues during the revocation hearing, such as the multiple violations Linder committed while on supervised release. However, the government does not adequately explain how those issues diverted the court from its expressed primary concern about "drugs." The government's arguments do not defeat Linder's showing by a reasonable probability, that but for the district court's <u>Tapia</u> error, he would have received a shorter prison sentence. <u>Molina-Martinez</u>, 136 S. Ct. at 1343. The third plain error condition is therefore met.

B.  EXERCISE OF DISCRETION

Finally, the <u>Tapia</u> error involved here implicates the fairness, integrity or public reputation of the judicial proceedings. See <u>Vandergrift</u>, 754 F.3d at 1307. It presents the reasonable probability the district court extended Linder's sentence because of an impermissible sentencing factor, in direct violation of binding precedent of both the Supreme Court and this Court. Correcting this plain <u>Tapia</u> error is therefore an appropriate use of our discretion, particularly because the

7

district court imposed a sentence that was longer than the applicable guideline range. See, e.g., United States v. Garza, 706 F.3d 655, 663 (5th Cir. 2013); United States v. Mendiola, 696 F.3d 1033, 1042 (10th Cir. 2012); United States v. Taylor, 679 F.3d 1005, 1007 (8th Cir. 2012); United States v. Grant, 664 F.3d 276, 282 (9th Cir. 2011).

## IV.  CONCLUSION

Because Linder has shown the district court committed a plain error that undermines confidence in the outcome of his sentence and the integrity of the sentencing proceeding, we vacate his sentence.  We remand for resentencing consistent with this opinion.

**VACATED and REMANDED.**

JULIE CARNES, Circuit Judge, dissenting:

Defendant James Linder appeals a 24-month sentence that was imposed by the district court after the second revocation of Defendant's supervised release. Defendant is a serial drug offender. He originally pled guilty in 2014 to conspiring to possess oxycodone with intent to distribute, and the district court sentenced him to 24-months imprisonment, with three years of supervised release to follow.

After completing his sentence of imprisonment, Defendant began his term of supervised release. It did not start, or end, well. In less than eight months, he had committed seven violations of release, including possession of heroin and DUI (less-safe drugs). For that reason, in March 2016, the district court revoked this first term of supervised release and sentenced Defendant to another 24 months of imprisonment, with a three-year term of supervised release to follow.

Defendant completed this latest term of imprisonment, and supervised release began again. But in just a few months' time, Defendant had committed nine violations of his release, including possession of methamphetamine. After the probation officer petitioned the district court to once again revoke Defendant's supervision, Defendant was arrested and released on bond. He absconded. After being located a month later, and arrested again, a revocation hearing was held in March 2018. The district court revoked this second term of supervised release and

9

sentenced Defendant to another 24 months of imprisonment, but this time with no supervised release to follow.

It is this last 24-month sentence that Defendant now appeals, arguing that the district court considered rehabilitation when imposing his prison sentence, in violation of the Supreme Court's holding in *Tapia v. United States*, 564 U.S. 319 (2011), and that he should be resentenced. Notably, Defendant never objected to this purported *Tapia* violation at sentencing, which, had he done so, would have given the district court an opportunity to clarify whether the particular sentence imposed had been prompted by the court's interest in rehabilitating Defendant. Instead, Defendant waited until it was time to appeal to contend that a *Tapia* violation had occurred: meaning that Defendant now has to satisfy the plain error test to succeed on this claim.

The majority vacates the sentence, concluding that the district court committed a *Tapia* error and that Defendant's failure to object is excused because plain error occurred. I respectfully disagree. A reading of the complete sentencing record, as opposed to a couple of isolated statements by the district court, makes it clear to me that the district court did not fashion its sentence based on any goal of rehabilitating Defendant from his drug dependency. Indeed, based on its comments and its own long, disappointing experience with Defendant, the district court well knew that this would be a lost cause. Moreover, even assuming that the

10

record indicated that the district court committed a *Tapia* error, I conclude that Defendant, whose counsel chose not to object at sentencing to what counsel now contends to be an error, has not met his burden under the plain error standard.

## I.    BACKGROUND

### A.    Defendant Violates Conditions of His First Supervised Release

As noted, in February 2014, Defendant pled guilty to conspiring to possess oxycodone with intent to distribute, and the district court sentenced him to 24 months imprisonment and a three-year term of supervised release. He served his sentence and, after only seven months on release, Defendant violated his supervised release term in seven ways: (1) committing the offense of DUI (less safe drugs); (2) committing the offense of Possession of Heroin; (3) failing to submit to drug testing; (4) failing to submit written reports to his probation officer; (5) failing to notify his probation officer of his arrests for DUI and Possession of Heroin; (6) associating with a convicted felon (i.e. co-defendant Shayna Massara) while using heroin[1]; and (7) failing to participate in a drug treatment program.

On March 23, 2016, the district court revoked Defendant's first supervised release and sentenced him to 24-months imprisonment and three years of supervised release. Of some pertinence to the matter at issue in this case, the

---

[1] According to the violation report, while driving a vehicle in Cobb County, Defendant was stopped by officers who observed an unconscious Massara in the vehicle. Taken by ambulance to the hospital, Massara was determined to have overdosed on heroin. Defendant, the driver of the vehicle, admitted that he had been using heroin as well, which led to his arrest for DUI and possession of heroin.

11

district court inquired, given Defendant's abject failure to abide by the drug conditions of release, whether Defendant had participated in the BOP's intensive drug treatment program when he served the 24-month sentence for the underlying conviction. The Government counsel, defense counsel, and the probation officer indicated to the court that this federal drug treatment program was not available for an offender with such a short sentence. Thus, the court was well aware that a 24-month sentence would not permit an offender to enroll in the drug treatment program sponsored by the BOP. Nonetheless, on notice that a meaningful rehabilitative opportunity was not in the offing, the district court imposed a 24-sentence, explaining, "I think it's clear that a sentence within the guideline range [of 8 to 14 months] is not enough given the multiple problems that [Defendant] has had staying away from hard drugs, and then, you know, the new conviction. I just don't think a sentence of less than 24 months would cut it."

B. **Defendant Violates Conditions of His Second Supervised Release**

Defendant served the above-described sentence, after which his second supervised release term commenced on September 1, 2017. In less than six months, Defendant violated the terms of his second supervised release in nine ways: (1) failing to participate in a drug treatment program; (2) failing to submit required drug tests; (3) failing to report to his probation officer as directed; (4) leaving the judicial district without permission; (5) committing the offense of

12

Following Too Closely; (6) failing to notify his probation officer of his offense; (7) failing to provide monthly employment verification as directed; (8) failing to submit required monthly reports; and (9) committing the offense of Possession of Methamphetamine. Defendant's Possession of Methamphetamine offense occurred after Defendant had been released on bond and had then absconded.

Based on these violations, on March 27, 2018 the district court revoked Defendant's second supervised release. It is the sentence imposed on this revocation that is at issue here. As to the sentence to be imposed, the Government argued for an 18-month sentence, noting Defendant's multiple supervised release violations and explaining that his recent methamphetamine possession violated not only his supervised release conditions, but also violated the terms of his bond. The Government further indicated that it was not asking for the maximum 24-month sentence because Defendant's agreement that his supervised release should be revoked saved the Government the  expense of having to bring witnesses to court.

Defendant's counsel conceded that Defendant's conduct involving continued drug possession has "not been great" and "is something that should be punished." Defense counsel recommended a 12-month sentence, which was toward the high end of the 8–14 month Guidelines range.

As to Defendant's drug dependency, it was defense counsel, not the district court, who introduced that topic and who focused on it in counsel's remarks,

13

stating "addiction . . . clearly that's the issue here." Counsel explained that Defendant "needs treatment" but that "he has to deal with [that] on his own" because "I don't think that the criminal justice system is the . . . appropriate forum for that any longer." Further, defense counsel advocated against re-imposing supervised release, as Defendant had performed so poorly.

The district court revoked supervised release "[i]n light of the admissions." The court addressed defense counsel's arguments that Defendant had made some progress, making clear that the court saw nothing to be gained by further efforts at treatment:

> Now, regarding the sentence, I hear what you're saying about possible progress, but it doesn't look good to me. I do believe that when -- especially when people are addicted to oxycodone, the first resort should be the therapy and medical treatment. But we've been through that loop, and as counsel have pointed out, this is the second hearing on revocation of supervised release.

> I believe that when treatment efforts have completely failed, as I think they have here, the best recourse is prison, because presumably, while [Defendant] is in prison, he cannot get these drugs. And that, to me, is the greatest hope that he might be able to shake the addictions that are really driving his life.

The district judge then outlined in great detail what it saw as Defendant's "complete pattern of irresponsibility," noting that the record indicated that Defendant had not "really made any efforts to overcome his problems." The district court cataloged Defendant's numerous acts of non-compliance with the conditions of his release, including: (1) his non-compliance with drug treatment

14

requirements, such as refusing to attend any classes at one center, then being assigned to a second program and refusing to attend classes there; (2) his refusal to submit to drug tests; (3) his failure to report to his probation officer when directly told to do so; (4) his unlawful travel outside the district; (5) his traffic violations; (6) his failure to report an automobile accident to his probation officer; (7) his multiple location-monitoring violations; and (8) his absconding after the magistrate judge had given him a bond.

The district court continued its explanation by focusing on Defendant's drug violations and his recent arrest for methamphetamine possession while in fugitive status on his bond. The district court also cited Defendant's "extensive criminal history that includes possession of a controlled substance, including Ecstasy, heroin and marijuana, underage possession of alcohol, an open container violation, driving on a suspended license, possession and use of drug-related objects, theft by shoplifting, and theft of -- and theft of property."

With that wind-up, the district court concluded by explaining why it believed that Defendant's conduct warranted a 24-month sentence:

> I think at this point, it is certainly indicated that the Court should give a sentence above the guideline range. I am empowered to give a sentence of 24 months, up to 24 months, and specifically am empowered to give a sentence above the guideline range if I feel that the guideline range is not adequate. It's clear to me that what's going to happen when [Defendant] is out on the streets again is he's going to be using drugs again and he could be a danger to people in the community, particularly if he gets in an automobile.

15

> I think while sending somebody to prison is, as I said, particularly in an oxycodone situation should not be the first resort. Sometimes it is a last resort, and <u>it will ensure that for 24 months, or whatever sentence I give, that [Defendant] will not be out on the streets using drugs</u>. I do feel that 24 months is the right sentence in this case. I do realize that it can be viewed as a harsh sentence, but honestly, I think at this point in time it is the best bet, both for [Defendant's] welfare and <u>for the welfare of the community</u>.

(emphasis added)

Defense counsel noted that the charge against Defendant for theft was still pending[2] and requested that the district court reconsider the imposed sentence to the extent that it was a factor, but acknowledged "that probably was not the final – factor in the Court's decision." The district court agreed, responding, "It was not. I mean, to me, the thing that just drives everything here is the drugs, that's the concern, my big concern."

The district court then imposed a 24-month sentence of imprisonment, with no supervised release to follow. When it came time for defense counsel to articulate any objections to the sentence, she objected only to the substantive reasonableness of the sentence, arguing that "a guideline sentence would have been more appropriate." Notably, there was no objection that the district court had violated *Tapia* by considering rehabilitation when imposing its sentence. And defense counsel's silence is understandable, as the the district court never

---

[2] According to the PSR, the pending charge related to Defendant's arrest in 2013 for theft by shoplifting and possession of heroin, when Defendant was observed at a Wal-Mart store stealing a pellet gun and syringe while in the possession of heroin and of a driver's license in the name of "Peter Quintana-Perez."

16

mentioned the availability of a drug treatment program in prison. As noted, given Defendant's short sentence, the district court had been made aware that he was not a candidate for such a program. Indeed, although the court made two comments suggesting that it might also benefit Defendant to be in jail and away from ready access to drugs, it is clear from the totality of the court's remarks that its overriding concern focused on the danger Defendant posed to the community because he could not stay away from drugs and because he had demonstrated on multiple occasions that he posed a danger to his community when he was using drugs. Nevertheless, Defendant challenges his sentence on appeal as being procedurally unreasonable arguing that the district court improperly considered the rehabilitative effect of prison when imposing his sentence.[3]

## II. Analysis

### A. Standards of Review

"We review the sentence imposed [by the district court] upon the revocation of supervised release for reasonableness." *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014), quoting *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008) (per curiam). We review the reasonableness of a sentence for abuse of discretion. *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017). However, because Defendant did not object to the procedural

---

[3] Defendant also challenges his sentence as substantively unreasonable. The majority does not reach this issue, given its determination that the case should be remanded for the district court to resentence Defendant.

17

reasonableness at the time of his sentencing, we review that claim for plain error. *Id.*; *Vandergrift*, 754 F.3d at 1307.

**B.    Defendant's Sentence is Procedurally Reasonable**

Defendant maintains his sentence is procedurally unreasonable under *Tapia*, 564 U.S. 319, because the district court improperly considered his need for rehabilitation as a sentencing factor. "In reviewing whether a sentence is reasonable from a procedural standpoint, we must ensure that the district court committed no significant procedural error during sentencing." *Alberts*, 859 F.3d at 985 (internal quotations omitted). To demonstrate that his sentence was procedurally unreasonable under a plain error standard, Defendant must show (1) the District Court erred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.*, citing *Vandergrift*, 754 F.3d at 1307 (quotation omitted and alteration adopted).

1.    Requirement That a Defendant Make a Contemporaneous Objection to Any Error Committed During a Sentencing Procedure

In any trial proceeding, a litigant who wishes to preserve an issue for appeal is required to object to the particular ruling. When it comes to objecting to something that the district court has ruled on in a criminal sentencing proceeding, our caselaw has made it clear that this requirement is particularly important. *See*

18

*United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990) (a clearly articulated objection to the court's reliance on a particular fact or consideration in imposing sentence "apprise[s] the district court of the need to identify for the record the evidence upon which it relied in making its factual finding.") "The purposes of the rule in *Jones* are to give the district court an opportunity to correct errors and to produce a record that will guide appellate review . . . . Neither of these purposes is served with respect to a particular argument if it is not made first to the district court." *United States v. Maurice*, 69 F.3d 1553, 1557 (11th Cir. 1995). "Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice." *Jones*, 899 F.2d at 1103. *Accord Maurice*, 69 F.3d at 1557 ("an objection that has been waived will only be entertained on appeal under the plain error doctrine to avoid manifest injustice.")

Our court's particular insistence on a contemporaneous objection to a sentencing error makes sense, given the nature of such proceedings. A sentencing hearing typically involves a lot of spontaneous interplay between the court and counsel. The court will often ask questions or make observations, and there is frequently a good deal of back-and-forth. Given the free flow of communication

between the court, counsel, and the defendant, it is important that a defendant advise the court, via an objection, when it believes the court may have relied on an improper factor, so that the court can either correct its error or clarify whether it is relying on the particular factor.

Here, Defendant clearly had an opportunity to object, but failed to alert the district court that Defendant believed the court may have relied on an improper *Tapia* factor. Accordingly, we can now entertain Defendant's tardy claim only if he satisfies the plain error standard.

### 2. Plain Error

"A district court commits a procedural error if it considers an improper sentencing factor." *Alberts*, 859 F.3d at 985. *Tapia* established that a Defendant's rehabilitative needs constitutes an improper sentencing factor. *Tapia*, 564 U.S. at 330–35. A sentencing court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Id*. at 335. We have held that *Tapia* error occurs where the district court "*considers* rehabilitation when imposing or lengthening a sentence of imprisonment." *Vandergrift*, 754 F.3d at 1310 (emphasis in original).

It is true that the Government conceded that the district court committed a plain *Tapia* error when it referenced the possibility that its sentence might also benefit Defendant, not just the community. But we are not bound by that

20

concession. *See Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253 (1999) ("[T]he concession of a point on appeal by respondent is by no means dispositive of a legal issue . . ."); *United States v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009) (noting that a court is not required to accept the concession of the government as a party). And in this case, based on the court's overall explanation of its sentencing decision, I believe that the Government wrongly concedes that it is plain that the district court violated *Tapia*.

While the district court did offer an observation that prison offered the "greatest hope" that Defendant might "shake the addictions that are really driving his life" and expressed its belief that the sentence benefited not just the welfare of the community, but also Defendant's welfare, those isolated comments do not demonstrate that the district court considered the need for rehabilitation in its decision to impose or lengthen Defendant's term of imprisonment, given the other reasons the court offered for its sentence. Rather, it appears that the district court, in responding to Defendant's own arguments related to his drug addiction, was inserting a note of empathy.

Moreover, "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs [,] . . . [and] a court properly may address a person who is about to begin a prison term about these important matters." *Tapia,* 564 U.S. at 334. Indeed,

21

while as an appellate court, we often focus on technical things like Guidelines' calculations, a sentencing proceeding is a more holistic endeavor. A good judge will not just tote up offense levels, but will instead try to engage with the defendant on a human level to render a sentence that accomplishes the purposes of 18. U.S.C. § 3553(a). In delivering the bad news that a defendant is being sent to jail, a judge will frequently express hope that the prison experience will prove not to be entirely negative, by observing that the defendant can make positive achievements if he chooses to use the experience to better himself. Such a comment is a gesture of kindness and positivity; not necessarily an indication that the judge has based its sentencing decision on rehabilitation considerations. And this kind of exchange can be particularly valuable when interacting with a defendant on supervised release. Further, while an addict or long-time criminal may listen as little to a sentencing judge as he has listened to the numerous other people in his life who have advised him to straighten up, a stern admonition by a judicial authority figure that the defendant will have no peace in his life until he casts aside his destructive behaviors is a message that may, on occasion, carry some weight.

I fear, though, that opinions like the majority's will greatly discourage a sentencing judge from engaging on any personal or helpful level with the person being sentenced. Instead, a prudent judge may conclude from the majority's opinion that robotic, scripted remarks are the safe way to proceed and resist any

22

specific expressions of encouragement or plain-talking advice for fear that it will appear that the judge is considering the defendant's rehabilitative needs in imposing the sentence. That would be unfortunate.

I have one other fear, should the majority opinion reflect a changing approach in this area, and that is that the majority is encouraging sandbagging by defense counsel. Our caselaw emphasizes the importance of preserving, through an objection, a perceived sentencing error. To ensure that litigants are incentivized to do so, the plain error standard should have some teeth to it. But in finding plain error on these facts, the majority's approach largely defangs this standard. There was absolutely no reason for defense counsel to be reticent in objecting, had she truly believed that the district court's sentence was infected with *Tapia* error. Without any doubt, an objection would have resulted in a response by the district court that would have provided absolute clarity as to the court's reasoning. But I suspect that defense counsel did not want clarity, and this decision serves to reward that strategic decision, as well as undermining our caselaw requiring a contemporaneous objection to any sentencing error.

At any rate, even assuming that the district court committed plain *Tapia* error, the Government correctly argues that Defendant has not shown that remand for resentencing is warranted because Defendant failed to satisfy the third prong of the plain error analysis.

23

### 3. Impact on Defendant's Substantial Rights

As the Government argues, the record reflects that any *Tapia* error by the district court did not affect Defendant's substantial rights. "In order to affect a defendant's substantial rights, an error 'must have affected the outcome of the district court proceedings.'" *Alberts*, 859 F.3d at 986, quoting *United States v. Olano*, 507 U.S. 725, 734 (1993). "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734. "This burden of showing prejudice to meet the third-prong requirement is anything but easy." *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).

Defendant failed to show that any *Tapia* error here affected his sentence. The sentencing transcript clearly reveals that any rehabilitative consideration was merely an ancillary concern of the district court and constituted only a minor fragment of the court's sentencing rationale. "A defendant cannot show that his substantial rights were impacted if his 'rehabilitative needs clearly constituted only a minor fragment of the court's reasoning.'" *Alberts*, 859 F.3d at 986, quoting *Vandergrift*, 754 F.3d at 1312 (quotation omitted). Here, the valid considerations of punishment, deterrence, and public safety fully supported the district court's decision to impose a 24-month sentence.

The record reflects three primary concerns of the district court in sentencing: (1) punishing Defendant for his irresponsible conduct, (2) vindicating the court's legitimate interest in insisting that supervisees follow its directives[4]; and (3) protecting the community by keeping Defendant off the streets for a longer period of time than that called for by the Guidelines. The district court deemed the guideline range "not adequate" following a lengthy recitation of appropriate § 3553(a) factors, including Defendant's "extensive criminal history," his "pattern of irresponsibility," and his most recent serious drug offense while absconding on his bond. The district court concluded that an above-guideline sentence of 24 months was warranted because:

> It's clear to me that what's going to happen when [Defendant] is out on the streets again is he's going to be using drugs again and he could be a danger to people in the community, particularly if he gets in an automobile.[5]

The district court's stated objective was to "ensure that for 24 months . . . that [Defendant] will not be out on the streets using drugs."[6] Thus, it was Defendant's

---

[4] Defendant's breaches were more than just illegally using drugs. He refused to take any of the steps he was directed to take to help him accomplish that goal, such as attending treatment sessions or speaking to drug counselors. And he directly violated specific conditions, such as by absconding when he was generously offered bond after being cited for his most recent violations.

[5] The district court's concern about the dangers posed by defendant's use of an automobile while under the influence of drugs was a realistic one. As set out in note 1, while on supervised release, the defendant had been arrested while operating a motor vehicle under the influence of heroin and with his female co-defendant unconscious in the vehicle from a heroin overdose. Defendant's criminal record also included a conviction for driving on a suspended license and a conviction for possession and use of drug-related items when Defendant was arrested inside a vehicle after reports that he and a companion were injecting drugs.

[6] The district court demonstrated concern for the well-being of one member of the community in particular, Ms. Massara, who was then in a halfway house. In addition to being a co-defendant, Ms. Massara was also involved in

25

history of recidivism, the nature and circumstances of his drug offenses, and the district court's desire to protect the community that drove the court's sentencing analysis.

While the district court expressed hope that Defendant could shake his addictions while in prison and its belief that the sentence imposed was not only best for the community, but also best for Defendant's welfare, that observation, by itself, is insufficient to vacate Defendant's sentence, given the other appropriate factors that clearly motivated the court. For instance, in *Vandergrift* we held that an above-guideline sentence of 24 months was procedurally reasonable despite the district court stating: (1) "I've also got to consider what's best for the defendant as a factor in the equation;" (2) "it's difficult to decide what really is best for the defendant in this case;" (3) "vocational training for a period of time in the prison system . . . could also help save the defendant's life;" and (4) "the sentence is being imposed in excess of the guidelines at 24 months ... for the benefit of the defendant." *Vandergrift*, 754 F.3d at 1311.

Likewise, in *Alberts*, defendant asserted that the district court violated *Tapia* by stating at sentencing that "[y]our pattern of behavior over the years demonstrates to me you do pose a danger to the community and you need a period

Defendant's heroin offense during his first supervised release. The district court directed that Defendant not be permitted to contact Ms. Massara, even while in prison.

of time where you can receive the treatment that you should have." *Alberts*, 859

F.3d at 985. We held that the district court's error did not affect defendant's

substantial rights because "the sentencing transcript showed that rehabilitation was

merely an ancillary concern" and the district court's "'primary considerations'

were the seriousness of [defendant's] offense, the need for punishment and specific

deterrence, and the need to protect society from his dangerous actions." *Id.* at 986.

This record does not support an outcome different from that reached by our

Court in *Vandergrift* and *Alberts*. Indeed, in both of those cases, the district court

had explicitly indicated that treatment or another prison program would be of

benefit to the defendant. In contrast, the district court here made clear that any

efforts to rehabilitate Defendant appeared to be largely a dead end. Moreover, the

court had previously been made aware that a defendant sentenced to only 24-

months imprisonment would not be eligible for the prison's intensive treatment

program. Thus, it is no surprise that the court never mentioned the availability of

treatment programs for Defendant while in prison, much less did it lengthen

Defendant's sentence to permit his completion of such a program.[7] It is very

difficult to understand how the majority can jibe its finding of an impact on

---

[7] As noted, the transcript from Defendant's first revocation hearing demonstrates that the district judge understood a 24-month sentence was too short to permit participation in a drug treatment program.

Defendant's substantial rights with our contrary holdings in *Vandergrift* and *Alberts*.

Moreover, the 24-month sentence here is the same term the district court imposed for Defendant's violation of his first supervised release when no *Tapia* issue was articulated. Defendant fails to explain how a lesser sentence for a second revocation would make any sense when the violations here were substantially like those that led to Defendant's first supervised release revocation. If anything, that the violations here continued a "complete pattern of irresponsibility", occurred in a shorter period, and involved another serious drug offense while Defendant was absconding on a bond, provide even greater justification for imposing the maximum 24-month sentence on a second revocation than on the first supervised release revocation. Based on the entire record, I have no doubt that the *Tapia* error, if any, constituted only a minor consideration in sentencing.

Thus, I am unpersuaded by Defendant's argument that the district court's concern for his rehabilitation "played a significant role in sentencing him to the statutory maximum of 24 months imprisonment." That argument rests on the incorrect notion that any mention of Defendant's drug offenses by the district court implicated Defendant's addiction and need for rehabilitation. For instance, Defendant states: "this Court need not speculate about the district court's 'primary considerations' because the court said itself: 'I mean, to me, the thing *that drives*

28

*everything here* is the drugs, that's *the* concern, my big concern.'" But that concern does not implicate Defendant's rehabilitation. Rather, the district court explained that an above-guideline sentence was warranted because "[i]t's clear to me that what's going to happen when [Defendant] is out on the streets again is he's going to be using drugs again and he could be a danger to people in the community, particularly if he gets in an automobile." That followed the district court's recitation of Defendant's "extensive criminal history that includes possession of a controlled substance, including Ecstasy, heroin and marijuana, underage possession of alcohol, an open container violation, driving on a suspended license, [and] possession and use of drug-related objects, . . ." and a detailed description of Defendant's recent methamphetamine offense. Thus, rather than reflecting a concern for Defendant's rehabilitative needs, the district court's "big concern" about "drugs" refers to Defendant's repeated drug offenses and his propensity to harm the community by doing drugs "on the streets." The district court cited that concern as justification for Defendant's 24-month sentence in the very paragraph in which the court announced the sentence.

Even if it were unclear whether the district court's "big concern" about "drugs" referred to Defendant's addiction and need for rehabilitation, rather than drug offenses that harm the community, Defendant would not prevail. Where uncertainty exists "the burden is the decisive factor in the third prong of the plain

29

error test, and the burden is on the defendant." *Rodriguez,* 398 F.3d at 1300. "The Supreme Court has explained that the 'burden should not be too easy,' because the prejudice standard 'should enforce the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error.'" *Id.* at 1299, quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). Here, Defendant failed to make a timely objection at sentencing and failed on appeal to carry his heavy burden of showing that any concern for his rehabilitative needs affected the length of his sentence.

Accordingly, I find no procedural error, and I respectfully dissent from the majority's decision to the contrary.